**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**

| | | |
|---|---|---|
| **MISTY MARTIN**, individually and on behalf of all other similarly situated individuals, | ) ) ) ) | **Civil Action No.** |
| **Plaintiff,** | ) ) | **COLLECTIVE AND CLASS ACTION** |
| **v.** | ) | **COMPLAINT AND JURY DEMAND** |
| **LOWE'S COMPANIES, INC.,** | ) ) | |
| **Defendant.** | ) ) ) | |

## COMPLAINT – CLASS/COLLECTIVE ACTION

Plaintiff Misty Martin, individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Class/Collective Action Complaint against Defendant Lowe's Companies, Inc., and states as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff Misty Martin (hereinafter referred to as "Plaintiff"), individually and on behalf of all similarly situated persons employed by Defendant Lowe's Companies, Inc. (hereinafter referred to as "Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; and the North Carolina Wage and Hour Act ("NCWHA"), N.C.G.S. §§ 95-25.1, *et seq.*

2.      Defendant is an American retail company specializing in home improvement. Headquartered in Mooresville, North Carolina, Defendant operates a chain of retail stores in the United States, Canada, and Mexico. As of February 2018, Defendant and its related businesses operate more than 2,200 home improvement and hardware stores and employ over 310,000 people

1

in North America.

3.      In order to service its customers, Defendant employs hourly customer service representatives, often internally referred to as Contact Center Associates, at brick-and-mortar call centers throughout the country (hereinafter referred to collectively as "CSRs"). Specifically, Defendant maintains call centers in Wilkesboro, North Carolina; Indianapolis, Indiana; and Albuquerque, New Mexico.

4.      As evidenced by the uniform position descriptions on Defendant's website[1], the CSRs all perform essentially the same tasks, regardless of which call center they are employed in, and any difference in title primarily reflects the tenure of the CSR.  All CSRs are paid on an hourly basis.

5.      Defendant employed Plaintiff as a CSR during the past three (3) years at its brick-and-mortar call center in Wilkesboro, North Carolina.

6.      Defendant requires its CSRs to work a set, full-time schedule. However, Defendant does not begin compensating CSRs until they have started up their computers and logged into all of the necessary computer applications. This policy results in CSRs not being paid for all time worked and for all of their overtime compensation in violation of the FLSA and the NCWHA.

7.      Defendant's CSRs use multiple computer programs, software programs, servers, and applications in the course of performing their responsibilities at the call centers.  These programs, servers, and applications are an integral and indispensable part of their work, as they cannot perform their job without them.

8.      Defendant's CSRs' jobs described herein are non-exempt positions.

9.      The U.S. Department of Labor recognizes that call center jobs, like those held by

---

[1] *See*, https://jobs.lowes.com/.

Defendant's CSRs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." Fact Sheet #64 at p. 2.

10. In order to perform their jobs, Plaintiff and the other CSRs are required to start-up and log-in to various computer programs, software programs, servers, and applications in order to access information and software. The start-up/log-in process took substantial time on a daily basis with said time ranging from nine (9) to seventeen (17) minutes per day, but extending even longer on days when Plaintiff and other CSRs experience technical issues related to Defendant's computers, software or programs.

11. Plaintiff and the other CSRs are not actually "clocked in" for their shift until *after* the computer start-up/log-in process is complete and they log into the applicable programs, software, servers, and applications, meaning that Plaintiff and other CSRs work at least nine (9) to seventeen (17) minutes each per shift that they are not compensated for. This off-the-clock time that Defendant's CSRs spent starting up and logging into each session directly benefits Defendant and this process is an essential part of each CSRs' job responsibilities.

12. Defendant provides CSRs with one unpaid 60-minute lunch break per shift. Defendant requires CSRs to clock-in and out of the time keeping system for all lunch breaks.

13. Defendant, however, requires its CSRs to perform off-the-clock, unpaid work functions during the unpaid lunch breaks including, but not limited to, logging into Defendant's computer programs, software programs, servers, and applications. Many of the computer programs utilized by Plaintiff and the other CSRs have an auto-log out feature that logs the CSR out if they

3

remain idle for too long. Consequently, Plaintiff and other CSRs often return for lunch and are required to redo some or all of the nine (9) to seventeen (17) minute boot-up process during their lunch breaks and while they were off-the-clock.

14. Between the pre-shift start-up/log-in process and the log-in/off during lunch period time, Defendant fails to pay Plaintiff an amount equal to at least nine (9) to thirty four (34) minutes of compensable time *per shift*. Additionally, Defendant failed to compensate Plaintiff for other off-the-clock time spent performing work duties during their lunch breaks, such as answering questions of supervisors and assisting other team members.

15. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

16. Defendant knew or could have easily determined how long it took for the CSRs working at the call centers to complete the pre-shift start-up/log-in process, and the lunch break work duties, and Defendant could have properly compensated Plaintiff and other CSRs for the work they performed, but did not.

17. Plaintiff brings this action on behalf of herself and all other similarly situated hourly CSRs who worked for Defendant at any call center in the United States, to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

4

## JURISDICTION AND VENUE

18.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

19.     Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

20.     Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's CSRs engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

21.     This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because it arises under the same facts as their federal claims.

22.     This Court has personal jurisdiction over Defendant because Defendant's headquarters are in this district and Defendant resides in this district.

23.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant resides in this district, and a substantial portion of the decisions and policy-making that give rise to the Plaintiff's claims occurred in this district.

## INTRADISTRICT ASSIGNMENT

24.     A substantial part of the events or omissions giving rise to the claims alleged herein occurred in Wilkes County, North Carolina; therefore, this action is properly assigned to the Statesville Division.

## PARTIES

25.     Plaintiff Misty Martin is a resident of North Wilkesboro, North Carolina and was employed by Defendant as an hourly CSR at the Defendant's call center in Wilkesboro, North

Carolina. She has been employed as a CSR by Defendant from approximately March 2015 to August 2019. Plaintiff Martin signed a consent form to join this lawsuit, which is attached hereto as ***Exhibit A***.

26. Defendant Lowe's Companies, Inc. is a North Carolina corporation (Sos Id: 0087443) with a Principal Office at 1000 Lowe's Blvd, Mooresville, North Carolina 28117-8520. Defendant Lowe's Companies, Inc.'s Registered Agent for service of process is Corporation Service Company**.**

## GENERAL ALLEGATIONS

27. The locations of Defendant's call centers in which CSRs are employed include: Indianapolis, Indiana; Albuquerque, New Mexico; and Wilkesboro, North Carolina.

28. The job duties of CSRs are the same or similar from call center to call center, as evidenced by the similar or even identical job postings on Defendant's website for each location. Additionally, the required qualifications for the CSR jobs are the same or similar at each call center location. ***Exhibit B***, Job Postings with Position Description.

29. Defendant compensates CSRs on a bi-weekly basis and pays them a base hourly rate. Plaintiff's most recent hourly rate was $15.99 per hour.

30. Defendant boasts itself as a Fortune 50 home improvement company that serves more than 18 million customers a week in the United States, Canada and Mexico.

31. In 2018, Defendant generated $71.3 billion dollars in sales, and its related businesses operate or service more than 2,200 home improvement and hardware stores. *Id*.

32. Plaintiff and other CSRs assist Defendant's customers by answering questions regarding products and services and/or providing them with updates regarding the delivery status of items purchased.

6

33.     In order to carry out their job duties CSRs are required to utilize nearly a dozen computer programs that are integral and indispensable to their job duties.

**Pre-Shift Off-the-Clock Work**

34.     Defendant records the hours worked by CSRs using a computerized timekeeping system called Kronos.

35.     At the start of the shift, the CSRs must enter the building and proceed to their work station.

36.     After locating a work station, the CSRs engage in nine (9) to seventeen (17) minutes of pre-shift off-the-clock work booting up their computers, which begins with a cold-start (the computer is completely shut down), followed by the loading and logging into of nearly a dozen programs, and concluding with CSRs logging into Defendant's time keeping system (Kronos). This process can often take even longer, particularly if the CSR experiences technical difficulties with the computer systems.

37.     First, CSRs must turn on their computer and wait for Windows to load, then enter a username and password. Once logged into Windows, the CSRs must load and log into all of their work programs so they are prepared to take calls the moment they clock in. This includes, but is not limited to, opening the following essential computer programs in chronological order:

    a.  Siebel – a program utilized for information regarding Defendant's customers;

    b.  Sterling – a program utilized for information regarding customer purchases;

    c.  Main Frame – a program utilized to provide CSRs with information regarding Defendant's inventory;

    d.  Genesis – a program used as a link between corporate employees and Defendant's various stores regarding stock, pricing, and inventory;

    e.  Microsoft Outlook, Word, and Excel;

7

f.  Defendant's instant messaging system;

g.  Documents Direct, Teradata, and Receipt Look Up – programs all used for locating customer receipts and other related data;

h.  Click – a program that tracks the delivery status of customers' purchases; and

i.  Kronos – the computerized time keeping system used to track CSRs compensable time.

38.     CSRs are expected to have all of the aforementioned programs up and running before they clock-in and begin taking calls from customers.

39.     As stated above, CSRs spend nine (9) to seventeen (17) minutes loading and logging into essential computer programs *before* they are able to log into the timekeeping system and begin getting compensated.  This process takes even longer if the CSR experiences technical difficulties, which often requires the CSR to perform one or more restarts on the computer.

**Mid-Shift (Lunch) Off-the-Clock Work**

40.     Defendant provides CSRs with a one hour unpaid lunch during the standard eight (8) to ten (10) hour shifts.

41.     At the start of their lunch period, CSRs must clock out of Kronos (the timekeeping system), then lock their computers and begin their lunch.

42.     Oftentimes, while on their lunch breaks, CSRs are automatically logged out of some or all of the programs.

43.     Consequently, when CSRs return from lunch to their workstations, they must redo some or all of the computer boot-up process and this process results in up to an additional nine (9) to seventeen (17) minutes of off-the-clock work, depending on how much of the boot-up process they need to redo.

8

**The Time Spent Loading and Logging into Computer Programs is Compensable**

44.    Throughout their employment with Defendant, Plaintiff and the CSRs regularly worked off-the-clock as part of their jobs as CSRs.

45.    Between the pre-shift start-up/log-in process and the lunch period log-in process, Defendant failed to pay Plaintiff and other CSRs an amount equal to at least nine (9) to seventeen (17) minutes of compensable time per shift. Additionally, Defendant failed to compensate Plaintiff and other CSRs for off-the-clock time spent performing other work duties during their lunch breaks, including answering questions from supervisors and assisting other team members.

46.    At all relevant times, Defendant was able to track the amount of time that Plaintiff and the other CSRs spent in connection with the pre-shift and lunch break work activities; however, Defendant failed to document, track, or pay Plaintiff and other CSRs for the work they performed in connection with each shift.

47.    Defendant knew or could have easily determined how long it took for the Plaintiff and the other CSRs to complete the pre-shift start-up/log-in process and the lunch break work duties, and Defendant could have properly compensated Plaintiff and other CSRs for the work that they performed, but did not.

48.    At all relevant times, Defendant was Plaintiff's "employer" and Defendant directed and directly benefited from the work performed by Plaintiff and other CSRs during the pre-shift start-up/log-in process and in connection with the mid-shift off-the-clock work during their meal breaks.

49.    At all relevant times, Defendant controlled Plaintiff and other CSRs' schedules, duties, protocols, applications, assignments, and employment conditions.

50.    At all relevant times, Plaintiff and all other CSRs were non-exempt hourly

employees, subject to the requirements of the FLSA.

51. At all relevant times, Defendant used their attendance and adherence policies against the CSRs in order to pressure them into performing off-the-clock work.

52. At all relevant times, Defendant's policies and practices deprived Plaintiff and other CSRs of wages owed for off-the-clock work that Plaintiff and other CSRs performed. Because Plaintiff and other CSRs typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived Plaintiff and other CSRs of overtime pay at a rate of 1.5 times their regular rate of pay, as required under the FLSA.

53. Defendant knew or should have known that Plaintiff's and other CSRs' time spent in connection with the off-the-clock activities set forth herein were compensable under the FLSA and the NCWHA.

**The Off-the-Clock Results in FLSA Overtime Violations**

54. Defendant pays CSRs on a bi-weekly basis.

55. Plaintiff and other CSRs are employed on a full-time basis, regularly work forty (40) or more hours in a workweek, and generally work five (5) shifts in a single week.

56. Because Plaintiff and other CSRs must perform a minimum of nine (9) minutes of off-the-clock work per day, or forty five (45) minutes per week, on any work week they work over 39.25 hours, they will have an unpaid overtime claim since Defendant does not include those 45 minutes in the CSRs' compensable time. This is a best case scenario for Defendant.

57. As stated above, based on Plaintiff's personal experience, nine (9) minutes per day is the minimum amount of off-the-clock work that occurred every day. If the upper threshold of off-the-clock work was applied, then the CSRs spend closer to two and half hours of time working off-the-clock, in which case they would have an unpaid overtime claim in any work week

they worked more than 37.5 hours.

## COLLECTIVE ACTION ALLEGATIONS

58.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own

behalf and on behalf of:

> *All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in the United States, at any time during the last three years.*

(hereinafter referred to as the "putative collective members").  Plaintiff reserves the right to amend

this definition as necessary.

59.     Plaintiff's FLSA claim should proceed as a collective action because Plaintiff and

putative collective members, having worked pursuant to common compensation policies described

herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated

decisional law.

60.      Plaintiff and putative collective members are similarly situated because (a) they

have been or are employed in the same or similar positions; (b) they were or are subject to the

same unlawful practice, policy, or plan; and (c) their claims are based upon the same factual and

legal theories.

61.     The key legal issues are also the same for putative collective members, to wit:

whether the off-the-clock time they spend in connection with performing pre-shift and lunch break

activities is compensable under the FLSA.

62.     Plaintiff estimates that the putative collective members, including both current and

former employees over the relevant period, will include several hundred members. The precise

number of putative collective members should be readily available from a review of Defendant's

personnel and payroll records.

11

## RULE 23 NORTH CAROLINA CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> *All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in North Carolina at any time during the last three years.*

(hereinafter referred to as the "Rule 23 North Carolina Class"). Plaintiff reserves the right to amend this definition as necessary.

64.     The members of the Rule 23 North Carolina Class are so numerous that joinder of all Rule 23 North Carolina Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 North Carolina Class members. Rule 23 North Carolina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

65.     There is a well-defined community of interest among Rule 23 North Carolina members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 North Carolina Class. These common legal and factual questions, include, but are not limited to, the following:

a.     Whether the pre-shift time that Rule 23 North Carolina Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

b.     Whether the time that Rule 23 North Carolina Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in, is compensable time;

c.     Whether Defendant's failure to pay the Rule 23 North Carolina Class members for this pre- and mid-shift time resulted in a violation of the overtime requirements established by the NCWHA, N.C.G.S. §§ 95-25.1, *et seq.*; and

d.  Whether Defendant's failure to pay the Rule 23 North Carolina Class member for this pre- and mid-shift time resulted in a violation of the NCWHA's requirement to pay employees all promised wages and the promised rates.

66.  Plaintiff's claims are typical of those of the Rule 23 North Carolina Class in that she and all other Rule 23 North Carolina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 North Carolina Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 North Carolina Class members.

67.  Plaintiff will fully and adequately protect the interests of the Rule 23 North Carolina Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 North Carolina Class.

68.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 North Carolina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

69.  This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

70.  Because the elements of Rule 23(b)(3) are satisfied in this case, class certification

13

is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

71.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 North Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 North Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

72.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in United States, at any time during the last three years.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition as necessary.

73.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimate there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

74.     There is a well-defined community of interest among Rule 23 Nationwide members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a.      Whether the pre-shift time that Rule 23 Nationwide Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

b.      Whether the time that Rule 23 Nationwide Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in, is compensable time;

c.      Whether Defendant's failure to pay the Rule 23 Nationwide Class members for this pre- and mid-shift time at their agreed upon rate constitutes a breach of contract; and

d.      Whether Defendant was unjustly enriched by failing to pay Plaintiff and the Rule 23 Nationwide Class members for this pre- and mid-shift time at their agreed upon rate.

75.     Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

76.     Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

77.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

15

78.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

79.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

80.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (Alleging Violations of the Fair Labor Standards Act,
### 29 U.S.C. § 201, *et seq.*)

81.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further allege as follows.

82.     At all times relevant to this action, Defendant was Plaintiff's employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq.*

83.     Defendant engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

84.     At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

85.     Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

86.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

87.     At all times relevant to this action, Defendant required Plaintiff and all similarly situated current and former Class members to perform at least nine (9) to seventeen (17) minutes of pre-shift start-up/log-in activities per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

88.     At all times relevant to this action, Defendant failed to compensate Plaintiff and all similarly situated current and former Class members for nine (9) to seventeen (17) minutes of off-the-clock, unpaid work activities they performed during their lunch breaks.

89.     The off-the-clock work performed by Plaintiff and all similarly situated Class members every shift is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

90.     In workweeks where Plaintiff and other Class members worked 40 hours or more, the uncompensated off-the-clock time should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage. *See* 29 U.S.C. § 207.

91.     Accordingly, Defendant's uniform pay practices and policies for CSRs systematically and routinely violated the FLSA.

92.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for their CSRs to perform the off-the-clock pre-shift and lunch break activities, and Defendant could have properly compensated Plaintiff and the Class for the work they performed, but did not.

93.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act,

an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 North Carolina Class Action)**
**Violations of North Carolina Wage and Hour Act**
**N.C.G.S. §§ 95-25.1, *et seq*.**

94.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

95.     At all times relevant to the action, Defendant is an employer covered by the overtime mandates of the North Carolina Wage and Hour Act ("NCWHA"), N.C.G.S. §§ 95-25.1, *et seq.*, and Plaintiff and the Rule 23 North Carolina Class are employees entitled to the NCWHA's protections.

96.     The NCWHA entitles employees to compensation for every hour worked in a workweek. *See* N.C.G.S. § 95-25.3.

97.     The NCWHA entitles employees to overtime compensation "not less than time and one-half of the regular rate of pay of the employee for those hours in excess of 40 hours per week." *See* N.C.G.S. § 95-25.4.

98.     Pursuant to the NCWHA, N.C.G.S. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and accrued promised wages, on the employee's regular payday.

99.     At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiff and the North Carolina Class all owed, earned, and promised wages, including for required work performed, and at the appropriate overtime rate that Plaintiff and the North Carolina Class were lawfully entitled to for hours worked in excess of forty (40) in a single workweek.

18

100. Pursuant to NCWHA, N.C.G.S § 95-25.8, it is unlawful for an employer to withhold any portion of an employee's wages without the employee's advance written authorization, including the amount and reason for the deduction. If the amount is not available when the employee signs the authorization, the employee must receive advance written notice of the exact amount and of the right to withdraw the authorization.

101. Consistent with the above, Defendant's wage withholding was in violation of N.C.G.S. § 95-25.6 and N.C.G.S § 95-25.8.

102. Consequently, as a result of Defendant's unlawful policies and practices, Plaintiff and the North Carolina Class have been deprived of compensation due and owing.

103. Defendant's failure to pay Plaintiff and the North Carolina Class all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiff and the North Carolina Class to liquidated damages in an amount equal to the amount of unpaid wages, under N.C.G.S §§ 95-25.22 (a l).

125. Defendant violated the NCWHA by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 North Carolina Class for the time spent on the work activities described in this Complaint.

104. As a result of Defendant's unlawful acts, Plaintiff and the North Carolina Class have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C.G.S §§ 95-25.6, 95.25.22(a), (a l), and (d).

105. Furthermore, as a result, Plaintiff and the Rule 23 North Carolina Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23 North Carolina Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and

other appropriate relief under the NCWHA at an amount to be proven at trial. *See* N.C.G.S. § 95-25.22.

**COUNT III**
**(Rule 23 Nationwide Class Action)**
**Nationwide Breach of Contract**

106.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further allege as follows.

107.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on Defendant's behalf.

108.    Defendant's contractual promises to pay Plaintiff and each Rule 23 Nationwide Class member's applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiff and the Rule 23 Nationwide Class members.

109.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, has an hourly rate of between $14.00 and $19.00 per hour.

110.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with pre-shift and meal period activities, described herein.

111.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiff and each

member of the Rule 23 Nationwide Class.

112. Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

113. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and every other member of the Rule 23 Nationwide Class have been damaged in an amount to be determined at trial.

**COUNT IV**
**(Rule 23 Nationwide Class Action)**
**Unjust Enrichment**

114. Plaintiff re-alleges and incorporates all previous paragraphs herein.

115. This Count is pled in the alternative to Count VII, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

116. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

117. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

118. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

119. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work

21

tasks at the request of and without objection by Defendant.

120.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

121.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

122.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

123.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

124.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff Misty Martin requests the following relief:

a.    An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order certifying this case as a class action (for the Rule 23 North Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff' North Carolina state law claims (Count II);

c.    An Order certifying this case as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts III and IV);

d.        An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA putative collective members and Rule 23 Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e.        An Order designating Plaintiff as the representative of the FLSA collective, the Rule 23 North Carolina Class, and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

f.        An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.        An Order declaring Defendant violated the NCWHA by failing to properly pay the Rule 23 North Carolina Class all wages earned and overtime premiums, as cited herein;

h.        An Order declaring Defendant is in breach of a contract with Plaintiff and the Rule 23 Nationwide Class to pay them at a predetermined agreed upon rate for all hours worked;

i.        An Order declaring Defendant was unjustly enriched by failing to pay Plaintiff and the Rule 23 Nationwide Class for all wages earned;

j.        An Order declaring Defendant's violation of the FLSA was willful;

k.        A Judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective, the Rule 23 North Carolina Class, and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

l.        An award of reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

m.        An award of pre- and post-judgment interest to Plaintiff on these damages; and

n.        An Order awarding such other and further relief as this Court deems appropriate.

***[Jury Demand and Signatures of Counsel on the Following Page]***

## JURY DEMAND

Plaintiff demands a jury trial.

Dated: February 14, 2020

Respectfully submitted,

/s/ *James J. Mills, Esq.*
James J. Mills, NC Bar No. 36529
BURNS, DAY & PRESNELL, P.A.
2626 Glenwood Avenue, Suite 560
Raleigh, North Carolina 27608
Phone: (919) 782-1441
jmills@bdppa.com

Kevin J. Stoops (*pro hac vice* forthcoming)
Charles R. Ash (*pro hac vice* forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
kstoops@sommerspc.com
crash@sommerspc.com

*Attorneys for Plaintiff and the Putative*
*Class/Collective Action Members*